Good morning, Your Honor. It's Dennis Reardon for Appellant George Franklin. The application of the law governing Sovereign Rejudgment Motions to this action, a 1983 action for a conspiracy to violate civil rights, has produced really one, and only one, but a very fundamentally important issue in question. For the most part, the district court correctly applied the rule that the plaintiff is entitled, as the nonmoving party, to all favorable inferences, all resolutions of fact on disputed questions must be resolved in his favor. And therefore, the Court found that you could, a reasonable jury, certainly could find a conspiracy here to convict Mr. Franklin on perjured testimony as to whether his daughter had recovered her memory under hypnosis. The daughter and her sister were aware that if it was hypnotically induced, it would not be admissible. Both the defendant had told her family that it was hypnotically induced, and then when she found out about the rule and surely told them to lie about it, the sister Counsel, let me just, if I may interrupt for a moment, tell you what is my concern about your part of the case, and maybe you can help me out. What is the evidence, as distinct from the speculation about the evidence, what evidence is there that would permit an inference of State action? That's the precise question, Your Honor. And what the district court found No. I want to know what your best evidence is, not what the district court's. We have de novo review. So what is your best evidence in the record that would permit an inference of State action? The record fully supports the conclusion that two State actors, Cassandro and Morris, met with the defendant in this case, who was the complaining witness, and she told them that she had been hypnotized for weight loss. The record supports the conclusion that each of them went into a trial and perjured themselves. Each of them said, no, she never said that. The district court found that Cassandro's notes contained the notation that she had been hypnotized for weight loss. And that's material how? Because the question would be so. The jury can find, okay, these three people all perjured themselves as to whether she had admitted being hypnotized. What inference could a jury draw from that? The reason they perjured themselves, and it's the only reason. Weight loss has, if that, if they had said, well, she was once hypnotized so she could lose weight, okay. So what is the materiality of that? Because it would establish that she had been hypnotized. At some other time for some other reason. Well, it would establish that she admitted that she had been hypnotized. What the government knew by the time of trial is that other evidence showed that she had told her family, yes, I have been hypnotized and this was hypnotically induced. So it was important for the state at trial to maintain, no, she's never been hypnotized. There's never been any hypnosis at all. Why would two state actors commit the crime of perjury and deny that she had admitted being hypnotized, other than the fact that once she admits being hypnotized, the Shirley door is open? You take the fact that she has admitted to the police she's been hypnotized with the fact that she told her family, yes, I've been hypnotized, and it was that hypnosis that led to my memory that the case is over, the prosecution is dead. Janice Franklin has said they deliberately lied about the hypnotically induced memory because they knew the case would come to a halt if they admitted that. So you have the record supports the conclusion that two police officers commit perjury in this case on the exact same issue, whether she has admitted hypnosis, albeit for weight loss. And a reasonable jury could say what the district court essentially found is the most that a jury could find is two separate conspiracies. You've got a conspiracy by the sisters over here to lie about the hypnotically induced memory. You've got a conspiracy by the police over here and one of the actors to lie about whether she ever admitted hypnosis. But those are two separate conspiracies. And who could possibly infer that the joint commission of perjury on the issue of whether she admitted hypnosis has anything to do with this conspiracy over here to deny a hypnotically induced memory? Let me change the subject for a second. I don't understand why she is not entitled to absolute witness immunity. Because in this court, in Harris v. Roderick, said that a conspiracy to convict on the basis of false testimony, if you are the complaining witness... But what makes her the complaining witness as opposed to just a percipient witness?  She just calls the police and says, I have information about a crime. What makes her the complaining witness? Well, what I think the district court correctly found is that she, a jury could find. She doesn't simply do that. She organizes a conspiracy with her sister to orchestrate perjury. Yes, she does make the complaint. But, Your Honor, Roderick says if you're a complaining witness, you don't have... If you're a complaining witness, you don't get absolute witness immunity. I don't understand, then, why anybody who calls the police and says, I've just witnessed a crime would then be denied immunity. I mean, under your construct, anybody who calls the police and says, I've witnessed a crime, go out and investigate, would be the complaining witness. Well, one legal point. In Malley, the issue before the Supreme Court was whether not a government official but a private witness was a complaining witness. And I don't think that anyone would say as a matter of law that anyone who files a complaint is necessarily a complaining witness. Did she file a complaint? Well, she made the original complaint. She called the police and said, I have information about a crime committed against somebody else. Right. But what I think the district court correctly found is that when someone orchestrates and a jury certainly could find it, orchestrated a broad conspiracy to bring a false prosecution, that that person can qualify as a complaining witness. What the court says is I cannot find as a matter of law that someone, even a private citizen, who is suborning perjury, obstructing justice, and deliberately bringing a false prosecution, knowing that if they told the truth, the prosecution could not be initiated because this Shirley rule cannot as a matter of law be found not to be a complaining witness. There is certainly nothing in this Court's jurisprudence that says that one who engages in actions such as that is not a complaining witness. The court would be breaking new ground, and I would submit be creating a conflict with Harris v. Rodrick. Harris v. that's the Ruby Ridge case? Yeah. That's the one where the complaining witnesses were actually involved in the shootout with the? That's right. Okay. Well, that's different. They were the part and parcel of the crime. Well, not of the crime they were charging. The crime they were charging was by Mr. Weaver, not by themselves. Did you want to reserve any time for rebuttal? Thank you, Your Honor. Thank you, Mr. Reardon. May it please the Court. Morning. Mr. Diestel, on behalf of Appellee Eileen Franklin Lipsker, there never was a conspiracy between Eileen Franklin Lipsker and the San Mateo County public officials to try and convict George Franklin on the basis of perjured testimony. There's no triable issue of fact as to an essential element of any such alleged conspiracy. In order for there to be a conspiracy, there must be a joint agreement, a joint meeting of the minds, that can be at very least inferred from the evidence presented. Here, there is no triable issue as to whether the detectives and the prosecutor ever joined such a plan. The key issue, as Your Honors have pointed out, is whether there is a triable issue as to did the detectives and the prosecutors ever disbelieve Eileen Franklin's story that she first recalled the details of this murder without the assistance of hypnosis. And the record is clear and unequivocal that those detectives and the prosecutor never once doubted their witness Eileen Franklin. And without that subjective intent, there can be no conspiracy. Unless they disbelieved Eileen Franklin, they could not be found by a jury to have joined a conspiracy with her. Now, there are questions of fact as to whether Eileen Franklin was hypnotized. She told her brother and her mother that she was hypnotized and recovered these memories under hypnosis, and then later at trial, she said, I was never hypnotized. I just told them that story because I wanted to give them an explanation that they would find believable. There is also a triable issue of fact as to whether Eileen Franklin remembered the details of this murder under the influence of hypnosis. Again, she told her brother and mother that she had first recalled the memories under hypnosis, and later at trial, she didn't. These issues were all known at the time of trial. These were not hidden from the defense. They formed the very basis for the defense. There's no question of fact, however, as to whether the state officials ever disbelieved Eileen Franklin. Now, appellant argues, and I was listening carefully when Your Honor asked, what evidence do you have that supports an inference that the detectives or the prosecutor were involved in a conspiracy? What evidence is there of state action? And the appellant argues and begins his argument with citing the court's attention to a note of a conversation that the detectives had when they went down to Los Angeles to interview the witness about the details of the crime. And the note says, witness hypnotized to lose weight. And from that, appellant argues that the court or a reasonable juror could come to the conclusion that the detectives were lying. And the reasoning behind that is that they said, well, the detectives say what the real conversation was, was that Eileen Franklin said that she merely considered hypnosis to lose weight. That she never told them that she had, in fact, been hypnotized to lose weight, and therefore there's a difference in the story. And the appellant argues that they're entitled to an inference from that evidence that the police officers lied. Now, that in and of itself doesn't establish the crux of the matter. That doesn't get the appellant where appellant needs to go. Appellant needs to establish that the detectives knew that Eileen Franklin was recovered, was first alerted to these memories of the murder while under hypnosis. That's what needs to be established by the appellant. Now, the question is whether or not there is evidence that suggests that this knowledge was within the minds of the prosecutor and the detectives during the prosecution of this case. Counsel, what is your position with respect to witness immunity, the question that Judge Silverman asked opposing counsel? On witness immunity, Your Honor, there is ample evidence and no question of fact, given the amount of evidence and the quality of the evidence describing the role of Eileen Franklin Lipsker in this case, that she was not a complaining witness. Under Briscoe, a witness is entitled to receive witness immunity for testimony that they give during the course of litigation. Under Briscoe, Briscoe is extended under tear or applied to the facts in tear to further state that this immunity not only covers the actual testimony, but understanding that the testimony does not take place in a vacuum, that testimony involves the preparation for the actual testimony as well. What appellant argues is that Harris and Malley make an exception for a complaining witness, somebody who swears out an affidavit that causes the power of the state to become involved without any discretion on the state as to whether or not to exercise that power. And once that happens, then under Malley and Harris, there is an exception to witness immunity. In this case, Eileen Franklin did not even make the initial report to the San Mateo County Police Department. Her husband did. It was not until three days later that she provided the initial information that was then investigated by the detectives. And it was not until a week later that the detectives interviewed her and she provided the account of the actual murder. The investigation, the prosecution, the decisions whether to pursue the prosecution were 100 percent, and this is without a tribal issue of fact clear in the record, were 100 percent undertaken by the prosecutors and the detectives doing the investigation. Eileen Franklin never swore out an affidavit. She never did anything other than respond to a request for information after her husband had reported, my wife knows something about a murder and we want to let you know what it is. And the record is clear that Eileen Franklin was reluctant and hesitant and had great trepidation about coming forward as opposed to being someone who could be characterized as a complaining witness, someone who could be characterized as being aggressively involved in pursuing and having the power to control the litigation. For those reasons, Your Honor, we submit that the district court was correct as to the lack of any state involvement being found in the alleged conspiracy. If there was a conspiracy, the conspiracy was with Eileen and her sister and her brother, but there is no showing at all in the record and no inference, no reasonable rational inference that can be drawn from the record that the detectives and the prosecutors, in fact, knew that she was lying and went ahead and prosecuted George Franklin regardless. Thank you very much. Thank you, Your Honor. Mr. Reardon, back to you. Very briefly. Judge Silverman, the district court used the definition of a complaining witness from Anthony Versus Baker as one who actively instigated or encouraged the prosecution of the plaintiff. It then relied on Roderick V. Harris as a complaining witness as someone who set in motion a series of events that they anticipated would lead to the plaintiff's indictment. In this case, there is a plethora of evidence that Eileen Franklin orchestrated with her sister, with her therapist, with her family, false allegations. This prosecution never would have begun without her, and there is plenty of evidence to support that her husband was very much an active participant in this. Suppose after the argument I go to the bank and while I'm waiting in line I watch a bank robbery and then I call the police and tell them what I saw. Am I the complaining witness if I'm the one who calls the police and tells them while I'm waiting in the bank I saw the teller get robbed? Well, I think that could be a question of fact and I think What's the question? What's the fact? I mean, those are the facts. Admittedly, in the hypothetical, Your Honor, but that's enormously different than putting a record before a jury and they could be instructed on the complaining witness immunity and say you have to find this witness as a complaining witness, but when you have a great deal of evidence that the prosecution resulted from a very extensive and well-thought-out plan to commit perjury, then I think a jury could find as a matter of fact that that person But immunity doesn't depend on the content of the testimony. That's the whole point of immunity. It depends on the function that the person is performing. And that's so in Judge Silverman's hypothetical, if he absolutely insists that this robbery be prosecuted, then is he, even though he didn't have anything to do with it other than to just happen to be there, is he the complaining witness or not the complaining witness? Well, I would certainly not venture to say that's necessarily a complaining witness. But in Roderick v. Harris, these police officers or federal officers did not control the prosecution. They were simply people who the Ninth Circuit found offered perjurious could have, a jury could find offered perjurious accounts to get this prosecution against Mr. Weaver going. There's no meaningful distinction between the role that Ms. Franklin Lipsker played in this case and the officers in that case. They were no more in control of the litigation than she was. This is a situation, I think in Roderick and here, the question is that there is evidence to support a well-orchestrated plan. We're not talking about the testimony at trial, but a well-orchestrated plan based on perjury to start the prosecution. And the final thing that I would say on the substantive issue is this. It has to be the defendant's position. They have to concede that the jury could find that Franklin Lipsker, Morris, and Cassandro all went into trial and perjured themselves on the same issue, whether she had admitted being hypnotized. And but the jury would then, as a matter of law, be precluded from saying that that joint perjury had anything to do with a generalized plan to convict him on the basis of perjured testimony regarding hypnotically induced memories. And I would submit to the Court that that is a classic issue of fact for the jury rather than one that can be resolved as a matter of law on a summary judgment  Mr. Reardon, thank you very much. And thank you, Mr. Beasley. The case just argued is submitted. Good morning.
judges: Hall, Silverman, Graber